# IN THE COURT OF APPEALS OF IOWA

No. 21-0333
Filed July 21, 2021

**IN THE INTEREST OF M.B. and E.T.,**
**Minor Children,**

**J.B., Father,**
        Appellant,

**K.T., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Brandon J. Dodgen of Conrad & Lemmenes, Humboldt, for appellant father.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Sarah Livingston, Fort Dodge, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., and Mullins and May, JJ.

**MAY, Judge.**

A mother and father separately appeal the termination of their respective parental rights to their children, M.B. and E.T. They challenge (1) the statutory grounds supporting termination, (2) whether termination is in the children's best interests, and (3) the juvenile court's refusal to grant them additional time to work toward reunification. We affirm as to both parents.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Then we address any additional claims raised by the parents. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

Both parents challenge the statutory grounds authorizing termination. With respect to E.T., the juvenile court found a ground for termination under Iowa Code section 232.116(1)(f) (2020). Paragraph (f) authorizes termination when:

>    (1) The child is four years of age or older.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

With respect to M.B., the juvenile court found a ground authorizing termination under section 232.116(1)(h). It authorizes the termination of parental rights when:

>    (1) The child is three years of age or younger.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The fourth element of 232.116(1)(f) is the same as the fourth element of section 232.116(1)(h). The parents limit their challenges to this fourth element, whether E.T. and M.B. could be returned to their home. The fourth element is satisfied when the State establishes a child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

Our de novo review of the record makes clear the children cannot be safely returned to either parent.[1] Both parents have significant and unresolved mental-

---

[1] Both parents argue there is no evidence of an ongoing risk of harm to the children based on the parents' persistent marijuana use. But even without consideration of their drug use, there is overwhelming evidence of an ongoing risk of harm to the children as discussed in this opinion.

health issues, which impede their ability to adequately parent. *See In re H.L.*, No. 18-1975, 2019 WL 478903, at *1 (Iowa Ct. App. Feb. 6, 2019). With respect to the mother, she testified that she has been diagnosed with depression, bipolar disorder, borderline personality disorder, dissociative disorder, PTSD, OCD, ODD, and ADHD. She has made threats of suicide multiple times and has asked law enforcement to kill her multiple times. In fact, in September 2020, the mother attempted to hang herself by wrapping a phone cord around her neck while in the county jail after being arrested for public intoxication. Her behavior is erratic: she threated to kill the social worker involved in this case; she texted the social worker "do ur fucking job Rachel fuck ur cunt ass supervisor"; she jumped out of two different caseworkers' moving cars when she did not like the conversation; and she cut herself and wrote a goodbye letter to her children. As recently as February 2021, police were called to the family home to check on the mother. She repeatedly told officers, "I just want to die." She described herself as "a very mentally ill person" and "not mentally stable for jail" and stated she "ended up killing [her]self" the last time she was in jail. Then she threw the family cat down a staircase. And when she testified on the third day of the termination hearing, her testimony was disjointed, rambling, erratic, and often unresponsive to the questions asked.[2]

The father faces similar problems. He testified he has been diagnosed with bipolar II disorder, generalized anxiety disorder, and manic depression. He has

---

[2] The termination hearing took place over three days: January 6, 2021; February 3; and March 2.

also made suicidal statements. He has difficultly controlling his emotions, which sometimes manifests in harmful conduct.

The children are also endangered by the parents' relationship, which has been plagued by domestic violence. Indeed, this case began back in 2017 when the parents got into an argument in the car, the mother drove at speeds in excess of 100 miles per hour, and got into an accident—all while E.T. was in the car. The mother hits the father, throws things at him, and yells at him. She strangled the father with a phone cord. And she dumped the father's medication in the toilet when they got into an argument. During one dispute, the father threw the family cat, breaking the cat's leg. Another time, the father got upset with the mother and punched a wall, hurting his hand. And both parents reported each other for perpetrating domestic violence during the last one-month reporting period prior to the termination proceedings. Yet the parents do not appear to appreciate the damage children suffer when they are exposed to domestic violence. *Cf. T.S.*, 868 N.W.2d at 435; *In re L.C.-M.*, No. 20-1661, 2021 WL 140072, at *2 (Iowa Ct. App. Apr. 14, 2021); *In re B.S.*, No. 20-1463, 2021 WL 609093, at *1 (Iowa Ct. App. Feb. 17, 2021).

Moreover, the parents' lives are generally too unstable to safely care for the children. *Cf. H.L.*, 2019 WL 478903, at *1 (collecting cases where a parent's lack of employment and stable housing weighed in favor of termination). They are currently unemployed and only briefly had jobs. For a time, the father lived with his brother, but the mother was not allowed to live with them. So the mother lived in a storage garage. While the father lived with his brother, the two used methamphetamine together because "it was kind of a bonding thing between"

them. Eventually, the parents moved back in together. But they are not current on their rent, and their landlord has started the eviction process. The only reason that process has stalled is the temporary moratorium on evictions issued in response to the COVID-19 pandemic. So we cannot consider their current housing to be stable.

In light of these facts, we conclude the juvenile court correctly determined the children could not be safely returned to the parents.

We move on to the second step in our analysis, which requires us to determine whether termination is in the children's best interests. We "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

When determining whether termination is in the children's best interests, we look to the parents' past performance as an indicator of the care they are likely to provide in the future. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And here the parents' past performance raises substantial concerns about the future. Although this case has been open for more than three years, the parents have made little to no progress. When looking toward the future, we anticipate the parents will continue to struggle with their mental health, housing, domestic

violence, and substance abuse. We do not envision an environment compatible with fostering the children to maturity.

Plus, these children are in desperate need of permanency. As the social worker put it, "the kids are struggling." E.T. has behavior issues stemming from his lack of permanency, and M.B. is beginning to display similar behaviors. But there is hope. The children are bonded to their foster parents in a pre-adoptive home. *See* Iowa Code § 232.116(2)(b). And termination would free them to reach true permanency through adoption. So we conclude termination is in the children's best interests.

Neither parents asks us to apply a permissive exception in section 232.116(3) to preclude termination. So we do not consider these exceptions.

Finally, we address the parents' request for additional time to work toward reunification. The court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six month period." *Id.* § 232.104(2)(b).

The parents suggest they are on an upward trajectory and should be given the time to prove themselves. But they have already been given ample time. And still they do not seem to be making meaningful progress. For example, in between the second and third days of the termination hearing, the mother asked police to kill her, she flushed the father's medication down the toilet, the father failed to attend his mental-health appointments and failed to take his medication. These are signs of decline or, at best, stagnation. They are not signs of improvement.

Moreover, the parents identify no concrete changes we could reasonably anticipate coming to fruition within six months. So we will not force the children to wait in limbo any longer. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the children's future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)). We decline to grant additional time to either parent.

**AFFIRMED ON BOTH APPEALS.**